```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

SHANNON ORANDA JEFFERIES,           )
                                    )
            Plaintiff,               )
                                    )
      v.                             )       1:24-CV-310
                                    )
UPSTREAM PHARMACY; UPSTREAM          )
PHARMACEUTICAL CARE, LLCA;           )
UPSTREAM ACCOUNTABLE CARE            )
NETWORK, LLC; AND UPSTREAM           )
CARE,                                )
                                    )
            Defendants.              )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Plaintiff Shannon Oranda Jefferies, proceeding pro se, is a 42-year-old black female and Certified Medical Assistant. (Doc. 1 at 6.) She has filed suit against UpStream Pharmacy, UpStream Pharmaceutical Care, LLC, UpStream Accountable Care Network, LLC, and UpStream Care, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. "Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA"); and North Carolina's Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-240 et seq. ("REDA"). (Id. at 1-2, 3.) According to Jefferies, Defendants failed to promote her, failed to accommodate her medical

conditions, and discriminated in the terms and conditions of her employment, as well as retaliated against her.[1] (Id. at 4-7.) Before the court is Defendants' motion to dismiss,[2] which is based on several grounds. (Doc. 14.) For the reasons set forth below, the motion will be granted and the action will be dismissed without prejudice.[3]

I. BACKGROUND

The complaint, read in the light most favorable to Jefferies as the non-moving party, asserts the following:

Jefferies is a Certified Medical Assistant with over 20 years' experience in health care. (Doc. 1 at 6.) She began work for "Upstream Pharmacy" as a clinical pharmacist assistant, which was supposed to be a "remote" position, on January 6, 2021. (Id.)

---

[1] Jefferies asserts in her briefing that her employment was terminated on June 17, 2024. (Doc. 16 at 5.) This alleged termination occurred after the filing of both her Equal Employment Opportunity Commission ("EEOC") charge on February 13, 2023, and her complaint in this action on April 11, 2024. (Doc. 1-2 at 2; Doc. 1 at 9.) This court accordingly cannot rely on such allegations, or any allegations which were not exhausted before the EEOC or were not included in the complaint. See Dawkins v. Staley, No. 1:22-cv-299, 2023 WL 1069745, at *2 n.3 (M.D.N.C. January 27, 2023) (unpublished) ("It is well-established . . . that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (quotation marks and citations omitted).

[2] To the extent Jefferies seeks to strike Defendants' request for an extension of time (Doc. 18), the request is denied. See Fed. R. Civ. P. 12(f) (motions to strike limited to pleadings).

[3] Defendants argue Jefferies has incorrectly identified them, noting that "Upstream Pharmacy" does not exist and UpStream Pharmaceutical Care, LLC "has never employed Plaintiff and has no relationship to the substance of her allegations." (Doc. 14 at 1 n.1.) Because the court dismisses the complaint without prejudice on other grounds, it need not consider these assertions.

She was not allowed to work completely from home until February 2023. (Id.) Jefferies experienced a variety of health problems while working, including contracting COVID-19 twice, being diagnosed with "Long Term Covid," and emergency surgery to remove her gallbladder. (Id.) No one at Upstream assisted her in obtaining Short Term Disability benefits or leave under the FMLA. While absent from work due to her surgery, her "PTM" (apparently a supervisory employee) "sent [her] messages, singled [her] out," and "harassed" her. (Id.) That PTM told Jefferies she would have to borrow paid time off because the PTM and other employees had stolen her paid time off. (Id.) When Jefferies complained about her treatment, "nothing was done" because her "DCC" (apparently another supervisory employee) worked with the PTM prior to joining Upstream and "showed favoritism" to the PTM based on that prior relationship. (Id.) Jefferies also notified an employee in Defendants' human resources department, and "[f]rom that day on . . . faced retaliation, increased work loads and discrimination, also adverse actions." (Id.) Jefferies was never offered the position of PTM, in her view because of "race, color, retaliation and age discrimination."

A new "PTM/CTL" told Jefferies that other employees spoke poorly of her and her work ethic. (Id.) The new PTM also told Jefferies another employee made comments "regarding her age." A different employee sent Jefferies a picture of a "102-year-old

3

lady blowing out candles" on Jefferies's birthday, which offended her. (Id.) Jefferies sent a complaint to human resources regarding retaliation and unfair treatment in September 2022. (Id.) Her DCC then threatened to move her to a new team, told her to "step it up," and "began to try and make a paper trail of work issues" which had not previously been raised with her. (Id.) Jefferies did not have any poor performance reviews prior to this time. (Id.)

Jefferies suffered various other setbacks at Upstream. The DCC "tried to relocate [her] to another team several times." (Id.) Her requests for "flexible work arrangements" in light of her health conditions were denied; her request for a reduction in hours went unmet until October 2023, only to later be rescinded by the DCC. (Id.) Her "HIPAA rights were violated." (Id.) Upstream admitted it made mistakes regarding her wages and PTO hours and did not act promptly regarding her FMLA emails. (Id. at 6-7.) Although Plaintiff has her associate's degree and is a Certified Medical Assistant, other employees — including younger, white employees — are paid more despite lacking Jefferies's experience. (Id. at 6.) Upstream has caused Jefferies "a great deal of stress," id. at 7, and in her words, "they tried to make it so hard on me that I would quit." (Id. at 6.)

## II. ANALYSIS

Defendants argue that process and service of process were insufficient under Federal Rules of Civil Procedure 12(b)(4) and (5) because the summons and complaint were not directed to an "officer, director or [managing] agent" of the corporate entities. (Doc. 14, at 5-6) (alteration in original) (boldface removed) (quoting N.C. Gen. Stat. § 1A-1, Rule 4(j)(6)(c) (2023)).

Service of process must comply with one of the statutory methods specified under state law. Thomas & Howard Co. v. Trimark Catastrophe Servs., Inc., 564 S.E.2d 569, 571 (N.C. App. 2002). Jefferies's affidavit is styled, "AFFIDAVIT OF RETURN OF SERVICE BY CERTIFIED MAIL," and states she attempted to serve Defendants with process by mailing through U.S. Mail, certified mail, return receipt requested. (Doc. 6 at 5-8.) However, the receipt she attached to her affidavit as well as her cover letter indicate that service was attempted via United Parcel Service Ground Commercial. (Id. at 1, 6-9.)

Federal law permits service on a corporation or unincorporated association in the manner permitted by state law, or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and — if the agent is one authorized by statute and the statute so requires — by also mailing a copy of each to the defendant." Fed.

5

R. Civ. P. 4(h)(1) & (2), 4(e)(1). North Carolina law permits service of process on a domestic or foreign corporation as follows:

> a. By delivering a copy of the summons and of the complaint to an officer, director, or managing agent of the corporation or by leaving copies thereof in the office of such officer, director, or managing agent with the person who is apparently in charge of the office.
>
> b. By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute.
>
> c. By mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the officer, director or agent to be served as specified in paragraphs a and b.
>
> d. By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the officer, director, or agent to be served as specified in paragraphs a. and b., delivering to the addressee, and obtaining a delivery receipt. As used in this sub-subdivision, "delivery receipt" includes an electronic or facsimile receipt.

N.C. R. Civ. P. 4(j)(6)(a)-(d).

Service of process statutes are strictly construed and followed, and a plaintiff who fails to comply with them, even where actual notice occurs, does not properly serve the defendant. Stack v. Union Reg'l Mem. Med. Ctr., Inc., 614 S.E.2d 378, 382 (N.C. App. 2005); Greenup v. Register, 410 S.E.2d 398, 400 (N.C. App. 1991); Broughton v. Dumont, 259 S.E.2d 361, 363 (N.C. App. 1979). "Absent valid service of process, a court does not acquire personal jurisdiction over the defendant and the action must be

dismissed." Thomas & Howard, 564 S.E. 2d at 572 (quoting Glover v. Farmer, 490 S.E. 2d 576, 577 (N.C. App. 1997)).

This court has previously explained the importance of service rules:

> The filing of a lawsuit is a serious event, irrespective of its merit. Service rules are structured to ensure due process and uniformity in the application of procedures which alert those receiving a corporation's mail that the enclosed lawsuit demands prompt attention. These rules apply equally to litigants proceeding with or without counsel. Service of process is not freestyle, and courts are directed not to overlook procedural deficiencies just because actual notice occurred.

Shaver v. Cooleemee Volunteer Fire Dept., No. 1:07cv00175, 2008 WL 942560, at *2 (M.D.N.C. Apr. 7, 2008) (citing Stack, 614 S.E.2d at 382, and Hoyle v. United Auto Workers Local Union 5285, 444 F. Supp. 2d 467, 474 (W.D.N.C. 2006)).

Jefferies's process and service of process were insufficient. The summons was directed solely to the corporate defendants and did not contain any direction to an "officer, director or [managing] agent." Jefferies's service of process suffers from the same deficiency. As confusing and incorrect as her affidavit is (no proof she used the U.S. Mail, certified mail, return receipt requested), she actually served whatever she served by United Parcel Service Ground Commercial[4] and failed to address it to an

---

[4] United Parcel Service Ground Commercial does not appear to be one of the delivery services authorized by 26 U.S.C. 7502(f)(2) and the

officer, director, or managing agent.

 Thus, the motion to dismiss will be granted as the court lacks personal jurisdiction over the Defendants. Fed. R. Civ. P. Rules 12(b)(4) and (5).[5] This is true even though Jefferies proceeds

---

accompanying Internal Revenue Service regulation, I.R.S. Notice 2016-30. See Designation of Private Delivery Servs., 2016-18 I.R.B. 676 (2016).

[5] Plaintiff's claims suffer other problems as well. Because she is proceeding pro se, the court would be remiss not to note them in the event she seeks to remedy her service defects. For example, claims for retaliation and harassment will be procedurally defaulted where they were not raised in an EEOC charge. Title VII's requirement that a plaintiff file a charge with the EEOC before suing is not jurisdictional, but it is mandatory. Fort Bend Cnty v. Davis, 587 U.S. 541, 551 (2019). This means that the court must apply the rule if a party properly invokes it; Defendants have done so here. See Hamer v. Neighborhood Housing Servs. of Chicago, 583 U.S. 17, 20 (2017). "The contents of the EEOC charge limit the scope of any subsequent federal lawsuit." Hughes v. Mountain River Trucking Co., No. 1:10-cv-889, 2012 WL 13035399, at *2 (M.D.N.C. Jan. 4, 2012). In this case, the factual allegations in the EEOC charge focus on Defendants' alleged failure to "reduce [her] work hours due to [her] medical issues." (Doc. 1-2 at 3.) Jefferies concluded by stating her belief she was being discriminated against because of her medical condition, her age, and her race. (Id.) Defendants note that Jefferies's EEOC charge does not mention harassment or retaliation. See Johlin-Thompson v. WSFX LLC, --- F. Supp. 3d ---, 2024 WL 2885903, at *2 (E.D.N.C. June 7, 2024) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.") (citation omitted). Moreover, the complaint is a shotgun pleading. (Doc. 14 at 7-8.) A shotgun pleading is "one that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading or one in which it is virtually impossible to know which allegations of fact are intended to support which claims for relief." Wilkinson v. Wells Fargo Bank, N.A., No. 3:19-cv-00580-RJC, 2020 WL 2542867, at *3 (W.D.N.C. May 19, 2020) (quotation marks and citations omitted). Pro se complaints which violate the prohibition on shotgun pleading are subject to dismissal. Id. Here, the complaint is organized neither chronologically nor on a claim-by-claim basis, and it is difficult for the court to determine which factual allegations are intended to support which claims for relief. The court does not address Defendants' other arguments as to the merits at this time. Suffice it to say that Jefferies's pro se status does not excuse failure to allege facts to

pro se, as the service rules are not relaxed for unrepresented litigants.

**III. CONCLUSION**

For the reasons set forth herein,

IT IS ORDERED that Defendants' motion to dismiss (Doc. 13) for insufficiency of process and service of process under Federal Rules of Civil Procedure 12(b)(4) and (5) is GRANTED, and the complaint is DISMISSED WITHOUT PREJDUCE.

                              /s/   Thomas D. Schroeder
                              United States District Judge

November 19, 2024

---

support conclusory allegations. See Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020).